And that is 2016-12-54. And Mr. Pickard will lead off as appellant. Good morning, Your Honors. Again, the issue in this matter is considerably more straightforward than some of the issues that are connected in regard to the PRC-wide Our contention is relatively... You might wait, I guess. Sure. Colleagues would just as soon switch around. Trying to move around, Your Honor. Sorry. Whatever you're comfortable with. Please proceed. Our contention is very straightforward. We submitted a targeted dumping argument under the regulations that were in effect at the time. All legal arguments are required to be in the opening brief. We included our arguments in the opening brief. And the department rejected that argument as being untimely. So our fundamental contention is to submit something by the established timeline and then have it rejected as untimely is inherently unreasonable. So in defense of its position, the government essentially makes two arguments. The first is they suggest that there was an established practice in regard to the requirement that these types of arguments would have to be made earlier. And in regard to their arguments as far as the so-called established practice, they point to three sources. The final modification that was published in regard to the new change in methodology. They point to other prior cases, other prior administrative review cases. And the third source that they point to is the practice from original investigations. Okay, so before you get into attacking each one of those separately, even if each one individually might not be enough, why couldn't the three of those things together along with the limitations on commerce's ability to take extra time to review these proceedings be enough to actually put you on notice? Sure. Your Honor, when you put them all together, what you have is either an absence of any express timeline or deadline or explicit statements by the department that there are no timelines. Right. So what we know is final modification doesn't say anything. We know the other prior administrative reviews explicitly state there are no timelines for this. And with the court's indulgence, one sentence from a prior administrative review that was about six months before our case said, quote unquote, the department has not established a deadline for targeted dumping allegations and administrative reviews. And so it would be unreasonable to reject this allegation as untimely where no such time limit was established. It's not, if I understand Your Honor's question, well maybe if you put all three together, maybe that provides notice or that could amount to a practice. If you put all three together, it's either silence on the issue in final modification or explicitly rejecting the idea of a timeline. And similarly, so final modification doesn't provide a timeline. The prior administrative reviews explicitly reject the timeline. And in regard to maybe whether the practice in original investigation should provide notice for administrative reviews, the department itself said that the practice from original investigations in regard to targeted dumping arguments doesn't bear on administrative reviews. And that's the Turkish pipe case that's cited in our report. Maybe this is just too practical on my part, but if I look at this and I say, wow, it's not even clear when I have to file this by, I'm going to check with Commerce and find out what my deadline is. Did you ever consider doing that? No, Your Honor, but I think your question really kind of goes to the heart of one of our arguments. The regulations are pretty clear where legal arguments need to be made. If there's any uncertainty, as you were referencing, the very fact that there would be uncertainty would undermine the government's position that there's an established clear practice. Let's put it a different way. What we did is we followed the standard rules of the road that are established by the department, and which are very similar to proceedings before this court or any other court. Facts are collected. There's an opening brief where the parties make their arguments, which is what we did. There's an opportunity for a rebuttal brief where the other side puts in their arguments contrary. There's an opportunity for a hearing, and then the decider of fact issues its decision. That's exactly what we did. Here, though, our arguments weren't rejected on the merits. They weren't even considered because they were deemed to be untimely, even though they were included within the timeline that was explicitly provided by the government. One other matter. There's an explicit regulatory timeline that we met. There's no established practices the department even set itself. Then the department basically makes an argument that would be unduly burdensome to have considered our argument, or our argument was so complex that it was excused from considering it at that time. I would note to begin with that arguments that the government makes in regard to being unduly burdensome are very clever and tricky and could be a trap for appellants in that if you don't respond to the arguments, obviously, you could be deemed to exceed it. If you get into a factual contention in regard to, well, you had four months to consider this, then you leave yourself open to an argument that you're making attempts to dictate to the department how it should allocate its resources. That's not what we're doing at all. What we're doing is our contention is that we obeyed the rules of the road that were established by the department. But the department told us when our case briefs were due. After all the factual evidence was collected, we submitted our arguments consistent with the timeline, the requirement to include all of our legal arguments, which is in the reg. Then our case brief was set itself by the department. What procedural vehicle would WAHI have had to respond? The rebuttal brief, which they used, Your Honor. So we put in an opening brief. They put in a rebuttal brief, just like we do in proceedings before this court. And if decisions are particularly complicated, the department always has the opportunity to do subsequent briefing or subsequent collection of information. And that's not just a theoretical issue. We know, in fact, that they do this. And how do we know that they do this? Because they did it in this case. There was another issue connected with court evaluation. And after all the briefing was done, they decided that they wanted to look at that issue a little further. So they solicited additional comments on it. If this was particularly complex and they wanted additional arguments, they were certainly free to do so. We're not recommending or arguing that how they should allocate their resources. What we're saying is it's fundamentally unfair to reject an allegation or arguments, which are as untimely, which are included in the very brief or the timeline that's established by the government. And part of your argument might be that they had a regulation and they withdrew it. They did, in fact, have a regulation previously in regard to targeted dumping, which they withdrew. I think which also further supports our case. So that regulation was removed. Its explicit statements and other decisions said that there was no explicit earlier timeline in which these arguments needed to be made. So the only regulation that remained that was still relevant was the requirement to make all of your legal arguments in your case brief, which is what we did. So unless, I'm sorry, unless there were any additional questions. We will save your rebuttal time. Thank you, Your Honor. And we have a long lineup of appellees who, for one reason or another, have chosen to split their time of one minute, two minutes. Mr. Toter has ten. So we'll begin with Mr. Toter. Thank you, and may it please the Court. With respect to the question of whether there was an explicit deadline stated for targeted dumping allegations in reviews at the time, there was not an explicit deadline stated. As we stated in the brief, there were, however, three sources from which there was more than adequate notice of what the Department's practice was with respect to handling of these allegations, which involve a lot of data analysis and which require both parties have the opportunity to comment not only on the allegation but on the results in order for there to be a robust process. And that was the reason why it was designed to be done at the preliminary stage rather than at the final case brief stage. Is it your position that somehow because Commerce in this case announced that it wants it earlier, that that's enough to require us to give deference to Commerce with respect to that determination? Not solely based on a statement in this case. As we stated in our briefs, we have three sources. One is the published Federal Register notice, the final modification on the practice from 2012. But you concede, I mean you've said repeatedly that that doesn't give any guidelines for this. It doesn't for all reviews going forward, but it does say that the reason why we're going to, I think it was 60 days after the effective date, was so that everyone would have the opportunity to comment on the methodology prior to the final reviews in those particular investigations, which emphasizes that, in fact, it is important for people to have the opportunity to comment on preliminary results prior to final results. So that shows that, at least in that particular subset, Commerce felt that was important. But again, it's not a subset that covers this circuit. This case is not in that subset, no. Right. But it shows that Commerce's practice, which, again, is in parallel with the process for investigations. In investigations, there's an explicit statute saying you have to file your target dumping allegation by that point, or there was at the time. The practice has changed now. But at the time, there was a statute that said you have to file your target dumping allegation, I think it was 45 days. And to the extent that you want anyone to read anything into that final notification, you have said after that that it doesn't apply to these circumstances. It didn't apply in this case in terms of a deadline from the final modification explicitly applying here. We're not saying that there was an explicit deadline that was stated. We're saying that this was part of the set of information that gave adequate notice that the time to make a targeted dumping allegation, which requires both sides to be commenting on a lot of data issues, is at the preliminary stage so that you can comment on the department's preliminary results in your case briefs, so that you don't have a post-final results and things could just stretch on forever. There has to be some kind of administrative finality. And because of the data-intensive nature of the targeted dumping analysis, that's why that structure was set up. With respect to the two administrative determinations, there's one from Cellulose from Finland, one from Pipe from Turkey. Appellants say, well, those cases were cases where they got them before the preliminary determination. They accepted them, so that doesn't say anything to what would happen if they got them after the preliminary results. That's not quite right. The question there in those two determinations was the number of days before the preliminary results was arguably less than the number of days before you would have to have filed your targeted dumping allegation under the statute for an investigation. So if you're 15 days, I think it was in the Turkey case, before the preliminary results, was that still acceptable? Even though you would have had to have filed it, I think, 45 days before the preliminary determination, if we were in the context of an investigation, they said that was okay. In the Turkey case, Commerce expressly stated, when the department recently announced it would consider whether to use an alternative comparison method in administrative reviews, on a case-by-case basis, the announcement contained no guidelines on the filing of a request to apply an alternative comparison method. So why actually did those cases not actually support the opposite result? The statement that the reason they were accepting the targeted dumping allegations that were filed when they were was because they were before the preliminary results were published. But the fact that it expressly stated that we had no guidelines? Those cases are out there now. They do provide guidelines. There was nothing before those cases, and now there is. We're going to accept these because it would be reasonable not to accept these, but you don't say it wouldn't be unreasonable not to accept something later than that. Well, they said it would be reasonable because we got them before the preliminary results in the absence of any other guidance having been given in other contexts. However, now, these cases are out there. They give guidance that, yes, Commerce looks very carefully at the question of whether something was filed before the preliminary results in deciding whether to take a targeted dumping allegation. Those provide two data points that were not out there previously. Third source of information was Commerce's practice from investigations, where, again, it was by statute that you had to make the allegation before the preliminary determination was issued. But, again, insofar as Commerce's practice is to follow the average-to-average in the reviews, as it does for the investigations, unless there's a reason for departure, again, if you're looking at it from the perspective of, okay, Commerce needs to have their allegations made before the preliminary results in order to depart from average-to-average for determinations, that doesn't automatically mean it should be the opposite in the context of results absent some affirmative indication to the contrary, and there is no affirmative indication to the contrary. At best, they're saying Commerce hasn't explicitly said we're going to do the same thing in reviews that we did for investigations, but there's no reason to say Commerce has said we're not going to do the same thing that we did for investigations. Can you point to me exactly where in those cases Commerce said, the reason we are concluding that we should accept these is because it was before the preliminary results? I didn't see that in either of those cases. Well, we cite on page 23 of our brief in the footnote, we make note of the number of days and the opportunity to comment on the post-preliminary results. That's actually in your footnote, but it's about the reality of the timing if you want to go back, if you want to look back and justify it after the fact. But there's nothing in those cases that says this is why we concluded that it was reasonable in these cases. I don't know whether there's, I'd have to look at the cases to see if there's anything more explicit. I don't have anything more explicit than that to point you to at this point, although the fact that there was the opportunity to comment on the post-preliminary results goes to the point we're making here, which is that because this is a data-intensive analysis, Commerce set it up so that people would have the opportunity to comment on the results, not just the allegation. Here, the appellants are saying no harm, no foul to the respondents because they have the opportunity to respond in their case briefs to our allegation. That's not what Commerce was doing in these prior reviews in the welded pipe from Turkey and the cellulose from Finland. They were giving parties the opportunity to comment on Commerce's analysis and their results before the final. Am I remembering right that in the Turkey case, Commerce didn't give its analysis of this issue in the preliminary results, but in a post-preliminary result? Yes, post-preliminary. So why couldn't you have done the same thing here? Well, we couldn't do it here because they raised the allegation the first time. A post-case brief results, and then you would do the same thing. Case briefs are before final results. They're not before post-preliminary. You can add a step, right? You'd have to add a post-final, which is kind of an oxymoron. The idea is Commerce isn't obligated to keep on setting up a ping-pong process where it can just go on forever. There has to be an administrative finality at some point. What is the legal standard, arbitrary and capricious, or what under which we are to judge whether what Commerce did here in saying too late is reversible? I believe that would be arbitrary and capricious standard. That doesn't apply to this proceeding, does it? Well, it's a review of the decision whether to take it. The ultimate decision is whether Commerce's determination is supported by substantial evidence and otherwise not in accordance with law. I'm not sure this is an evidence question. I'm asking a question of whether Commerce improperly chose not to take. So what law do you think they're saying is that this is not in accordance with? It was unclear which law they were saying it was not in accordance with. I don't know if I have a more robust answer to the court's question. All right. Mr. Hodor, thank you very much. I think Mr. Devine is it? Yes. Yes, Your Honor. You talk fast. I will talk fast, Your Honor. I have 60 seconds. To pick up on Judge Taranto's question, which law are we talking about? Your Honor, the law does not dictate how Commerce shall conduct targeted dumping allegations or how it shall conduct its proceedings with regard to 1677 F-1, right? It's left to Commerce's discretion. And here, getting back to Judge O'Malley's questions about whether there was adequate notice, I'd like to draw more of a straight line than I think what we've heard. We've sort of heard scattershot, right? Going back all the way to 2007, when Commerce was making a change in their investigations practice, Commerce had rejected a petitioner's allegation for being untimely filed when they filed it late in their case brief. So starting in 2007, that was the case. And, of course, that was under the old targeted dumping regulation, which required it to be 30 days before the date of the prelim. However, Commerce withdrew the allegation in 2008. Yet every single domestic industry in investigations was still following the 30 days before the prelim to make allegations. And then Commerce in 2012, before the prelim in this case, announced that it was going to be following the exact same procedures as it had in investigations. In fact, in their final modification, they said they will be examining the same criteria the department examines in original investigations. One of those criteria is, did the domestic industry make out the allegation required for finding targeted dumping? And so with that, I've exceeded my 60 seconds, but thank you for the court's indulgence. Thank you, Mr. Veline. Mr. Schultzman. May it please the court, I'll speak almost as quickly. Judge O'Malley, you asked, where does it say that the allegation had to be made prior to the preliminary determination? It doesn't say that. Nowhere does it say that. But your question regarding the combination of factors and the evidence of the three or four different items in combination certainly is sufficient notice to the petitioner that the allegation has to be made prior to the preliminary, or if not, it does so at its peril. The purpose of the case brief is not to raise allegations that have not been raised before. The purpose of the case brief is to discuss the department's preliminary determination. It's always been that way. And so that's one of the reasons why Commerce wants this allegation made before the preliminary. In certain cases we've seen, the allegation was made very close to the preliminary determination, such that the Commerce Department was unable to make the determination at the preliminary. And what it did, because it felt it had sufficient time, it conducted a post-preliminary analysis of targeted dumping. We saw that in two cases that have been cited in the briefs. And Commerce specifically left this issue flexible because anti-dumping administrative reviews require that kind of flexibility. There's nothing to say that if the petitioner had filed its targeted dumping allegation one day after the preliminary, or two days after the preliminary, that Commerce would not have accepted it. In fact, if you look at the final determination, Commerce kind of says that. And let me just quote from it. Given the elapsed time between the issuance of respondents' questionnaire responses and the issuance of the preliminary determination, we find that the petitioner had ample opportunity to have filed its targeted dumping allegation prior to the date of the preliminary, and certainly prior to its case brief. So the petitioner waited going on three months after the preliminary to file it. And Commerce at that point said, sorry, fellas, too late. But it's possible, I suppose, given the flexibility that Commerce Department wants to have with administrative reviews, that that might have happened. It's just that this one came too late. And that was the decision. That's the crux of this decision. Thank you, Mr. Schritzman. We have your position. Mr. Menegas has one minute. Good morning, Your Honors. Maybe to follow up on that point, the petitioner should have known this is an extremely complicated allegation that they're making. It's not a simple math situation as they've portrayed in their brief. It's a complex allegation that merits a response of complex law and facts from the respondents. It's more similar to a critical circumstances allegation or sales below cost allegations. They're all required to be made before the prelim. The prelim can only be made with a closed record. And their allegation came way beyond the point where the record would have had to remain open for the respondents to have a chance, a real chance to rebut. They can't add new facts in rebuttal brief. And so it's wildly inappropriate that they raised it. Given the very flexibility we were just talking about that Commerce maintains, Commerce could have reopened. Theoretically, but that's in exceptional cases. Once in a while, they'll do a post-preliminary result and then let the case brief happen. But the record has to be closed before the case briefs are filed. In other words, they didn't make the allegation in time for Commerce to issue us questionnaires, give us a chance to rebut the targeted dumping allegations. It's not you press a button in SAS and voila, there's targeted dumping. We have all kinds of fact and legal-based rebuttals to a targeted dumping allegation. And they've been subject to mounds and mounds of litigation at the CIT and potentially before the panel. It's a very complex set of law and facts, as we pointed out on page 10 of our response brief, where Commerce and the remand redetermination explain this. It's not simple push a button in SAS and say yes or no to this formula. And we also addressed, Judge Toronto, the legal standard at page 10 of our response brief. The court will only overturn the interpretation if plainly erroneous or inconsistent with regulations and procedures. So it's an incredibly high standard that petitioners have here, and they should have known that this was in the class of the other types of allegations that are required to make before the prelim, so the department can investigate them and give the respondents a chance to add facts to the record before it's closed at the prelim. Thank you, Mr. Menegas. Thank you very much. Adding cleanup is Mr. Neely. Very quickly, I want to address an issue which is the same in this case as it was in the prior one that we just talked about. That's basically your cross-appeal. Yes, correct, Your Honor. And it's an issue that was raised by Judge O'Malley about we made a statement in this case and in the prior one that we are the only company in China that produces diamond saw blades, and we're not related to anybody that is government related. And what does commerce do then? And the answer from the statute and from the case law is they have two choices. They can either ask questions or they can accept the statement. And in terms of asking further questions, I'd just refer the court to 19 U.S.C. 1677 M.D. Thank you. Thank you. And Mr. Neely, Mr. Pickard has a little rebuttal time. Good morning, Your Honor. Just a few quick points. In essence, and to paraphrase loosely, the arguments that you've heard from Appleese are essentially that we should have known that there was a deadline even though commerce was telling everyone there was no deadline. That strikes me as fundamentally unreasonable. Where's the reasonableness standard under which that would be a sufficient ground to – Going back to your previous question. We don't have general APA arbitrary capriciousness review here. I believe you do have a general APA – The statute says substantial evidence not in accordance with law. Or otherwise contrary to law. And contrary to law also incorporates concepts of unreasonable decision making acting in an arbitrary capricious manner. So the department's decision to deem something as untimely when it comports with the timeline, we would suggest is otherwise contrary to law because it is either unreasonable under guidance from this court or just amounts to arbitrary and capricious decision making, Your Honor. I would make one or two other minor points. There were some references in regard to how complex these are from a data perspective. And I think this is a minor point, but I think it's of some importance that the government concedes now these allegations are done automatically. They're automatically part of the government's program. And it is essentially done at the push of a finger. And the government does it across the board, sua sponte. And the government essentially concedes this on, I believe it's page eight and nine of their brief, the footnote at the bottom. So the idea that this would be somehow too intensive to do is a bit of a canard in that now it's done automatically in every investigation. And it's a standard part of the department's program. That being said, I just want to come back to the basic contention here. The department said not just once, but in two different cases that there were no deadlines. And to your question, Judge O'Malley, nowhere in those decisions does it say there are no deadlines as long as it's before the preliminary determination. It's not caveated. There's no qualification or limitation in those decisions on their face. Nor was there any notification by the department in this particular case that there was an obligation to provide our allegations earlier. So maybe just to recap, what we're asking this court to do, the department clearly could have evaluated our case, our arguments, and found them not to be persuasive or to be lacking in merit. But what was improper was for them not to even consider the merit of our cases when they were timely submitted. And here we know they were timely submitted because they were done within the timeline that was required under the regulations. And there was no practice to the contrary. So what we're asking this court to do, please, is to remand the matter back so that the department can run its standard program to incorporate our basic argument that there was targeted dumping going on in this case. There was a point made, I think, by one of the lawyers who stood up for such a brief period, I barely remember, about how this is a matter on which the record could reasonably be viewed as having to be reopened had you made this allegation. This is not just legal argument about closed record, but if you made some targeted dumping allegation in your case brief, they would have been entitled to say, oh, there's actually more facts that we didn't need to put in, didn't put in, now we need to. Can you address that? Yeah, sure. I think they're just factually incorrect, Your Honor. The evidence of record was collected. We suggested that a methodology should be applied to the data that had been collected. There were no new facts included in our allegation, nor would any new facts be needed to be added to the record to evaluate this, our basic argument. It was a legal argument in regard to the methodology that should be applied. I think if I remember right, one of the things that the lawyer said was something about different questions would be asked if there were an allegation of targeted dumping. Can you address that? Factually incorrect, Your Honor. If you look at even the department's current practice, it's done automatically in the program. So it's essentially a macro. It's a subpart of the program where it's automatically evaluated on the facts that are established. No additional data would need to be collected. Nor are we asking for the record to be reopened in this case. It's merely to have our argument evaluated, and if it's found to be meritorious, to apply that methodology. Thank you, Mr. Picard, and thanks to all counsel for a thoroughly argued case. Take it under advisement.